IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

JUN 1 1 2010

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DENAR RESTAURANTS, LLC, | § | Bankruptcy No. 09-41675-RFN-11 |
| | § | |
| Debtor. | § | Adversary No. 09-04165-rfn |
| _____ | § | |
| | § | |
| IN RE: | § | |
| | § | |
| GOLDEN RESTAURANTS, INC., | § | Bankruptcy No. 09-44425-RFN-11 |
| ET AL., | § | (as consolidated for joint |
| | § | administration with |
| | § | Nos. 09-44427-RFN-11, |
| | § | 09-44428-RFN-11, |
| | § | 09-44426-RFN-11, |
| | § | and 09-44939-RFN-11) |
| | § | |
| Debtors. | § | Adversary No. 09-04253-rfn |
| _____ | § | |
| | § | |
| JESSICA POLLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | District Court Case |
| VS. | § | No. 4:10-CV-055-A |
| | § | |
| DENAR RESTAURANTS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

            *     *     *     *     *     *

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DENAR RESTAURANTS, LLC, | § | Bankruptcy No. 09-41675-RFN-11 |
| | § | |
| Debtor. | § | Adversary No. 09-04176-rfn |
| _____ | § | |

IN RE:                          §
                                §
GOLDEN RESTAURANTS, INC.,       §   Bankruptcy No. 09-44425-RFN-11
ET AL.,                         §      (as consolidated for joint
                                §      administration with
                                §      Nos. 09-44427-RFN-11,
                                §      09-44428-RFN-11,
                                §      09-44426-RFN-11,
                                §      and 09-44939-RFN-11)
                                §
            Debtors.            §   Adversary No. 09-04320-rfn
_____§
                                §
METRO A, LLC, ET AL.,           §
                                §
            Appellants,         §
                                §   District Court Case
VS.                             §   No. 4:10-CV-257-A
                                §
JESSICA POLLEY,                 §
                                §
            Appellee.           §

## MEMORANDUM OPINION
### and
### ORDER

After a thorough review of the records of Case No. 4:10-CV-

055-A (which, before withdrawal of reference, was Adversary

Proceeding No. 09-04165-rfn in Bankruptcy No. 09-41675-RFN-11 and

Adversary Proceeding No. 09-04253-rfn in Bankruptcy No. 09-44425-

RFN-11) and Case No. 4:10-CV-257-A (which, before withdrawal of

reference, was Adversary Proceeding No. 09-04176-rfn in

Bankruptcy No. 09-41675-rfn and Adversary Proceeding No. 09-

04320-rfn in Bankruptcy No. 09-44425-RFN-11), the court has reached the following conclusions:

1. There should be a remand to the Court of Appeals, Second District of Texas, at Fort Worth, ("Fort Worth Court of Appeals") of the appeal that, before removals to the bankruptcy court, was carried on the docket of the Fort Worth Court of Appeals as Case No. 02-09-00025-CV, styled "Metro A, LLC, Denar Restaurants, LLC, Sun Holdings, LLC, POP Restaurants, LLC, Golden Restaurants, Inc., Firebrand Properties, LP, Corral Group, LP, Kansas Corral, LLC, Sunny Corral Management, LLC, Guillermo Perales, Frys [sic] Management, LLC, TAG Corral, LLC and Indie Corral, LLC, Appellants, v. Jessica Polley, Appellee."[1]

2. The stays created by 11 U.S.C. § 362 existing by reason of the bankruptcy cases mentioned in the caption should be lifted as to the appeal mentioned in paragraph 1 above, so that the parties to the appeal will be at liberty to take whatever action is appropriate in pursuit or

---

[1]The appeal mentioned in paragraph 1 of the text is from a judgment signed October 15, 2008, by Judge David Evans of the District Court of Tarrant County, Texas, 48th Judicial District, in favor of Jessica Polley in the damage suit bearing Case No. 48-232713-08 mentioned in paragraph 3 of the text. Consistent with an abbreviated reference used for that state court suit in prior filings in these actions and in the bankruptcy court, the court refers herein to that damage suit as "Polley III."

resistence of the appeal, and the Fort Worth Court of

Appeals will be at liberty to take such actions in reference

to the appeal as it deems appropriate.

3.   There should be a remand to the District Court of

Tarrant County, Texas, 48th Judicial District, of the state

court suit that, before removals to the bankruptcy court,

was carried on the docket of such state district court as

Case No. 48-232713-08, styled "Jessica Polley, Plaintiff, v.

Metro A, LLC; Denar Restaurants, LLC; Sun Holdings, LLC; POP

Restaurants, LLC; Golden Restaurants, Inc.; Firebrand

Properties, LP; Corral Group, LP; Kansas Corral, LLC; Sunny

Corral Management, LLC; Frys [sic] Management, LLC; TAG

Corral, LLC; Indie Corral, LLC; and Guillermo Perales,

Defendants."

4.   The stays created by 11 U.S.C. § 362 existing by

reason of the bankruptcy cases mentioned in the caption

should be modified and lifted as to the state court suit

mentioned in paragraph 3 above to the extent that Jessica

Polley ("Polley") will be permitted to conduct post-judgment

discovery activity in such suit and to engage in judgment-

collection activities against Metro A, LLC, Sun Holdings,

LLC, POP Restaurants, LLC, Firebrand Properties, LP, Corral

4

Group, LP, Guillermo Perales, and Fries Management, LLC, and the state court will be at liberty to take such actions in reference to such post-judgment discovery activity and such judgment-collection activities as the state court deems appropriate.

Now that the references to the bankruptcy court have been withdrawn as to the proceedings and matters mentioned in the April 16, 2010, order in Case Nos. 4:10-CV-055-A and 4:10-CV-257-A, the court is treating the motions for leave to file interlocutory appeals filed by Polley in Case No. 4:09-CV-616-A (consolidated with Nos. 4:09-CV-641-A and 4:09-CV-642-A) to be motions for reconsideration of the rulings as to which the interlocutory appeals were sought and related rulings of the bankruptcy court.  By this memorandum opinion and order, the court vacates many of those rulings, and provides the court's reasons for doing so.

I.

## THE INTERLOCUTORY, VEL NON, CONTROVERSY

The outcome of most of the pending disputes between Polley and the defendants in Polley III is controlled, or significantly affected, by the resolution of the highly contested issue as to

whether the Polley III judgment was final and appealable on October 15, 2008, when it was signed by Judge David Evans, the presiding state district judge.  If it was final and appealable at that time, the state district court lost jurisdiction over the judgment before Polley III was removed to the bankruptcy court, with the consequence that the bankruptcy court did not have jurisdiction in the removed state district court action to make certain rulings it made affecting the judgment.  For the reasons given below, the court has concluded that the judgment was final and appealable when it was signed October 15, 2008.

A.    **Chronology of Events Potentially Pertinent to a Resolution of the Issue of Finality and Appealability**

      1.    The Rendition of the Polley III Judgment and Related Events

The defendants against whom the Polley III judgment was rendered were Metro A, LLC ("Metro A"), Denar Restaurants, LLC ("Denar"), Sun Holdings, LLC ("Sun"), POP Restaurants, LLC ("POP"), Golden Restaurants, Inc. ("Golden"), Firebrand Properties, LP ("Firebrand"), Corral Group, LP ("Corral"), Kansas Corral, LLC ("Kansas"), Sunny Corral Management, LLC ("Sunny"), Fries Management, LLC ("Fries"), TAG Corral, LLC ("TAG"), Indie Corral, LLC ("Indie"), and Guillermo Perales ("Perales") (collectively, "Polley III defendants").  Before October 15,

6

2008, there was a fourteenth defendant, An-Mar Companies, L.L.C.
("An-Mar"), in Polley III.

At the commencement of the October 15, 2008, judgment
hearing, an attorney for Polley informed Judge Evans that, before
proceeding, Polley wanted to nonsuit An-Mar.  Judge Evans
responded by saying "An-Mar has been nonsuited."  App. 2 at 44.[2]
Judge Evans then said, in reference to a form of judgment that
was being proposed by the attorneys for Polley, that:  "The Court
is going to change the caption on the judgment to reflect that
[An-Mar is] not in the case any longer.  That's just a form of
reordering the caption."  Id.  The hearing concluded with Judge
Evans announcing, "I'm going to grant the default judgment in
this case against all defendants [in the amount of $957,011.63],
save and except the nonsuited Defendant, An-Mar Companies."  Id.
at 46-47.

---

[2]The "App. ___ at ___" references in this document are to Bates-type page numbers in
appendices that have been filed in one of the captioned actions or a related action pending in this court.
As a reference to an appendix is first used in this memorandum opinion and order, information
identifying the appendix referenced will be footnoted at that point.

The "App. 2 at ____" references are to an appendix filed January 4, 2010, in Case No. 4:09-CV-
616-A (consolidated with No. 4:09-CV-641-A and No. 4:09-CV-642-A) titled "Refiled Exhibits to the
Objection of Appellees to Motion for Leave to File Interlocutory Appeal and Brief in Support Thereof
Filed October 21, 2009."  All items on file in Case No. 4:09-CV-616-A (as consolidated) are deemed to
be part of the record of the captioned actions.  See, e.g., April 16, 2010, order in Case No. 4:10-CV-055-
A at 11.

Before being changed by Judge Evans, the caption of the judgment listed the names of the original fourteen defendants, including An-Mar. As the record reflects, before Judge Evans signed the judgment, he marked through An-Mar's name and placed his initial by his mark-through, thus indicating that, by marking through the name, he was engaging in a judicial act. App. 1 at 73.[3] The body of the judgment names only the remaining thirteen defendants, and the damage award made by the judgment was against only those defendants. The judgment concluded with the statement that "[t]his judgment is final and disposes of all claims and all parties, and is appealable." Id. at 75.

2.   The Motion for New Trial

On November 13, 2008, all the defendants against whom the Polley III judgment was rendered filed a motion for new trial. The motion was heard by Judge Evans on December 3, 2008. Because Judge Evans had not ruled on the motion for new trial within seventy-five days after October 15, 2008, the motion was overruled by operation of law on December 29, 2008.

---

[3]The "App. 1 at ___" references are to a two-volume appendix filed January 12, 2010, in Case No. 4:09-CV-616-A (as consolidated) titled "Complete Set of the Exhibits to the Motion for Leave to File Interlocutory Appeal and Administratively Consolidate Filed in the Consolidated Action and to Be Treated as Exhibits to Such Motion in Each Action."

3.   <u>The Notice of Appeal</u>

On January 29, 2009, the Polley III defendants filed a notice of appeal to the Fort Worth Court of Appeals from the Polley III judgment and the overruling of their motion for new trial.  The notice was accompanied by a motion for an extension of time for filing it, which alleged that the notice of was not timely filed because of a miscalculation of the deadline.[4]  The appeal was given No. 02-09-00025-CV on the docket of the Fort Worth Court of Appeals.

4.   <u>The February 2, 2009, Letter of the Fort Worth Court of Appeals</u>

By letter of February 2, 2009, directed to the attorney for the Polley III defendants, the clerk of the Fort Worth Court of Appeals acknowledged receipt of the notice of appeal but expressed concern that the court "may not have jurisdiction over this appeal from the trial court's March [sic] 15, 2008 Default Judgment because the judgment does not appear to dispose of Defendant An-Mar Companies, LLC, and does not appear to be a final appealable interlocutory order."  App. 1 at 268.  The letter advised that the appeal would be dismissed for want of

---

[4]Rule 26.1(a)(1) of the Texas Rules of Appellate Procedure required that the notice of appeal be filed by January 13, 2009.

jurisdiction unless by February 12, 2009, a party desiring to
continue the appeal filed with the court a response showing
grounds for continuing the appeal.

    5.   February 12, 2009, Response of Polley III Defendants to
          February 2, 2009, Letter of Fort Worth Court of Appeals

On February 12, 2009, the Polley III defendants responded to
the February 2, 2009, letter of the Fort Worth Court of Appeals
concerning the possibility that the Polley III judgment was an
interlocutory order by requesting the Fort Worth Court of Appeals
to retain the case on its docket and allow the Polley III
defendants to continue their appeal.  After reciting the facts
pertinent to the rendition of the judgment, the Polley III
defendants assured the appellate court that the Polley III
judgment was not interlocutory but was final and appealable.

    6.   The Granting of the Motion of the Polley III Defendants
          for an Extension of Time to File Notice of Appeal

By order dated February 13, 2009, the Fort Worth Court of
Appeals granted the motion the Polley III defendants had filed on
January 29, 2009, for an extension of time for the filing of
their notice of appeal.  The order said that the clerk's and
reporter's records were due March 16, 2009.

    7. <u>Letter from Fort Worth Court of Appeals Fixing Briefing Schedule in Appeal from Polley III Judgment</u>

By letter of March 17, 2009, the Fort Worth Court of Appeals sent a letter to counsel for Polley and the Polley III defendants informing them that the clerk's record had been filed in No. 02-09-00025CV on March 12, 2009, and that the appellants' brief was due April 13, 2009.

    8. <u>The Filing of the Denar Bankruptcy and the Removal of Polley III to the Bankruptcy Court</u>

On March 24, 2009, Denar filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Denar bankruptcy case"). The case was assigned to Bankruptcy Judge Russell F. Nelms. On that same date, Denar caused Polley III to be removed from the state district court to the bankruptcy court, where it was docketed in the Denar bankruptcy case as Adversary Proceeding No. 09-04165-rfn.

    9. <u>Removal of Polley III Appeal to the Bankruptcy Court</u>

On April 10, 2009, all Polley III defendants caused the appeal from the Polley III judgment to be removed from the Fort Worth Court of Appeals to the bankruptcy court, where it was docketed in the Denar bankruptcy case as Adversary Proceeding No. 09-04176-rfn.

10.   Order of the Fort Worth Court of Appeals in Response to
      the Removal of the Polley III Appeal

On April 21, 2009, the Fort Worth Court of Appeals

acknowledged the removal to the bankruptcy court of the appeal

from the Polley III judgment, and ordered that for administrative

purposes the appeal was abated and treated as a closed case.   The

order went on to provide that "[i]f the federal court remands the

case to this court, this appeal will be automatically reinstated

when the federal court issues a remand order and the federal

court clerk mails a certified copy of the order to this court."

App. 6 at 211.[5]

11.   Judge Nelms's Order Remanding Polley III to State
      District Court as to All Defendants Other than Denar

On May 28, 2009, Judge Nelms signed an order in Adversary

No. 09-04165-rfn remanding Polley III to the state district court

as to all parties except Denar, but denying a remand as to Denar.

12.   Judge Nelms's Order Declaring the Polley III Judgment
      to Be Interlocutory, but as to Denar Only

On May 28, 2009, Judge Nelms signed an order in Adversary

No. 09-04165-rfn declaring as to Denar that the Polley III

---

[5]The "App. 6 at ___" references are to a six-volume appendix filed January 26, 2010, in Case No. 4:09-CV-616-A (as consolidated) titled "Appellant's and Debtor-Appellees' Jointly-Filed Appendix of Exhibits Evidencing the Procedural History of the Appeal of 'Polley III.'"

judgment was interlocutory.  The order said that it did not apply
to any defendant in the remanded Polley III.

13.  Judge Nelms's Order Remanding the Removed Appeal to the
     Fort Worth Court of Appeals as to All Appellants Other
     than Denar, and Dismissing the Appeal as to Denar
     Without Prejudice to Refiling

On June 4, 2009, Judge Nelms signed an order in Adversary
No. 09-04176-rfn remanding to the Fort Worth Court of Appeals the
removed appeal from the Polley III judgment as to all appellants
other than Denar; and, the order provided that, as to Denar, "the
Removed Appeal is Dismissed Without Prejudice to re-filing."
App. 6 at 567.

14.  Motion of Polley III Defendants to Fort Worth Court of
     Appeals to Reopen Case on Appeal

On June 12, 2009, the Polley III defendants (other than
Denar) filed a motion in the Fort Worth Court of Appeals Case No.
2-09-00025-CV asking the court to reopen the appellate
proceedings in that case.  The movants informed the court that
the bankruptcy court had remanded the appeals of all defendants-
appellants other than Denar.

15.  The Supplemental Response of the Polley III Defendants
     to the February 2, 2009, Letter of the Fort Worth Court
     of Appeals

On June 12, 2009, after retaining a new set of attorneys,
the Polley III defendants (other than Denar) filed with the Fort

13

Worth Court of Appeals (1) a supplemental response to the
February 2, 2009, letter of the Fort Worth Court of Appeals, this
time reversing the position they took in their February 12, 2009,
letter by now maintaining that the Polley III judgment was an
interlocutory, nonfinal judgment, and that the appeal should be
dismissed for want of jurisdiction, and (2) an emergency motion
asking for a temporary stay of enforcement of the Polley III
judgment on the ground that the Fort Worth Court of Appeals had
not completed its jurisdictional inquiry by a determination of
whether the Polley III judgment was interlocutory or final.

    16.   <u>Order of the Fort Worth Court of Appeals Granting</u>
           <u>Motion of Polley III Defendants to Reopen the Case</u>

On June 30, 2009, the Fort Worth Court of Appeals issued an
order in Case No. 02-09-00025-CV (a) granting the motion of the
Polley III defendants (as appellants in the appeal) to reopen the
case, (b) abating the appeal and remanding the case to the trial
court for the entry of (i) a written order nonsuiting An-Mar in
accordance with the oral announcement of nonsuit as to An-Mar
made on the record by Polley in open court on October 15, 2008,
and (ii) a written order nonsuiting or severing Polley's causes
of action against Denar, (c) ordering that the appeal was to be
reinstated without further order of the court upon receipt by the

court of the clerk's record containing the two orders the court

of appeals required, and (d) denying the motion of the Polley

defendants to temporarily stay enforcement of the Polley III

judgment.

> 17.  The Order Signed by Judge Evans Confirming that on
>      October 15, 2008, the State District Court Granted
>      Polley's Nonsuit as to An-Mar

On July 10, 2009, the Polley III defendants (other than

Denar) filed in the Polley III state district court a motion to

quash and for protective order seeking a ruling that Polley

should not be permitted to take post-judgment discovery or other

enforcement actions in Polley III.  Basically, the ground of the

motion was that post-judgment discovery and actions to enforce

the Polley III judgment should not be permitted because the

Polley III judgment was interlocutory.  Judge Evans heard the

emergency motion on July 13, 2009.  During the hearing, he signed

an order stating that "[o]n the 15th day of October, 2008, the

Court granted Plaintiff's Non-Suit as to An-Mar Companies, LLC."

App. 2 at 81.  Judge Evans denied the motion to quash, announced

that he was going to order that post-judgment depositions be

taken in Polley III, and directed the parties to submit a new

scheduling order providing that depositions would be scheduled

within fourteen days of the date of the hearing.

18.  Judge Evans's Order of Severance

On July 15, 2009, Judge Evans signed an order in Polley III
severing Polley's claims against Denar from her claims against
the other Polley III defendants and ordering that the severed
claims be given Case No. 48-238773-09 in the state district
court.

19.  Motion to the Fort Worth Court of Appeals by the Polley
     III Defendants for Clarification of the June 30, 2009,
     Order; and the Ruling of the Fort Worth Court of
     Appeals Denying the Motion

On July 17, 2009, the appellants in appeal No. 02-09-00025-
CV filed with the Fort Worth Court of Appeals an emergency motion
to clarify the court's June 30, 2009, order.  The thrust of the
motion was to obtain a declaration that the Polley III judgment
was interlocutory and, therefore, was not appealable until Judge
Evans signed the July 13, 2009, order concerning An-Mar's
nonsuit.  On July 22, 2009, the Fort Worth Court of Appeals
issued an order denying the emergency motion to clarify.

20.  The Filing of the Golden Bankruptcy Cases and Second
     Removal of State District Court Polley III

On July 23, 2009, Golden, TAG, Indie, and Kansas each filed
a bankruptcy case under Chapter 11, and on August 7, 2009, Sunny
filed a bankruptcy case under Chapter 11.  The Golden and Sunny
bankruptcy cases (collectively, "Golden bankruptcy cases") were

16

all assigned to Judge Nelms.[6]   The debtors in the Golden

bankruptcy cases caused Polley III again to be removed to the

bankruptcy court where, this time, it was docketed as Adversary

Proceeding No. 09-04253-rfn in the Golden bankruptcy cases.

     21.   <u>Letter from Fort Worth Court of Appeals to Counsel</u>
           <u>Concerning Reinstatement of Appeal from Polley III</u>
           <u>Judgment</u>

On July 30, 2009, the clerk of the Fort Worth Court of

Appeals informed counsel for the parties in Case No. 02-09-00025-

CV that the court had received a supplemental clerk's record

containing the trial court orders issued pursuant to the order of

June 30, 2009, of the Fort Worth Court of Appeals and that the

appeal was reinstated.   The letter informed counsel that the

appellants' brief was due August 31, 2009.

     22.   <u>Notice to Fort Worth Court of Appeals of the Golden</u>
           <u>Bankruptcy Cases</u>

On August 12, 2009, bankruptcy counsel for Golden, Kansas,

TAG, Indie, and Sunny notified the Fort Worth Court of Appeals of

the Golden bankruptcy cases.

---

[6]On August 19, 2009, Judge Nelms signed an order granting joint administration of the Sunny bankruptcy case with the previously filed Golden, TAG, Indie, and Kansas bankruptcy cases under Case No. 09-44425-RFN-11.

23.  September 4, 2009, Order in No. 09-04165-rfn Setting
     Aside Polley III Judgment and Granting Denar a New
     Trial

On September 4, 2009, Judge Nelms issued an order in

Adversary No. 09-04165-rfn ordering that Denar's default in

failing to file an answer in Polley III on or about October 13,

2008, was set aside and that Denar was granted a new trial in

Polley III.

24.  Removal to the Bankruptcy Court in Golden Bankruptcy
     Cases of the Appeal to the Fort Worth Court of Appeals
     of the Polley III Judgment

On September 25, 2009, Golden, TAG, Indie, Kansas, and Sunny

caused the appeal to the Fort Worth Court of Appeals of the

Polley III judgment again to be removed to the bankruptcy court,

where it was docketed in the Golden bankruptcy cases as Adversary

No. 09-04320-rfn.

25.  October 9, 2009, Order of Fort Worth Court of Appeals
     Acknowledging Removal of Polley III Appeal

On October 9, 2009, the Fort Worth Court of Appeals issued

an order in No. 02-09-00025-CV acknowledging that it had been

notified that on September 25, 2009, the case was removed to the

bankruptcy court.  The order stated that for administrative

purposes the case was abated and would be treated as a closed

case, and that if the case is remanded the appeal will

automatically be reinstated when the federal court issues a

remand order and the federal court clerk mails a certified copy

of the order to the Fort Worth Court of Appeals.

**B.    Texas Standards for Determining Finality and Appealability**

In 1966 the Texas Supreme Court recognized that "[t]he

finality of judgments for appealability has been a recurring and

nagging problem throughout the judicial history of this State."

N.E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex.

1966).   Finally, in 2001, the Texas Supreme Court in Lehmann v.

Har-Con Corp., 39 S.W.3d 191 (Tex. 2001), after reviewing the

struggles the Court had experienced for more than one hundred

years in seeking to define an acceptable standard to be applied,

id. at 195-203, made a series of pronouncements to the end of

eliminating uncertainty on the subject.   The Court stated, as a

general proposition, that the standards to be applied should have

the goal of ensuring that the right to appeal is not lost by an

overly technical application of the law, and that "this principle

should guide in determining whether an order is final."   Id. at

205.   The Court then said that:

> [W]hen there has not been a conventional trial on the
> merits, an order or judgment is not final for purposes
> of appeal unless it actually disposes of every pending
> claim and party or unless it clearly and unequivocally

states that it finally disposes of all claims and all
parties.

Id.

The Court explained the importance of a study of both the
record and the language of the order in the making of the
determination of finality, noting that "whether a judicial decree
is a final judgment must be determined from its language and the
record in the case," id. at 195, and that:

> The record may help illumine whether an order is made
> final by its own language, so that an order that all
> parties appear to have treated as final may be final
> despite some vagueness in the order itself . . . .

Id. at 206.

Important to the instant action, the Court made special
mention of the desirability of the use in an order that was
intended to be final of the recitation that it "finally disposes
of all parties and all claims and is appealable." Id. The Court
again emphasized that an "order must be read in light of the
importance of preserving a party's right to appeal." Id. And,
the Court added that, "[i]f the appellate court is uncertain
about the intent of the order, it can abate the appeal to permit
clarification by the trial court." Id.

In M.O. Dental Lab v. Rape, 139 S.W.3d 671 (Tex. 2004), the
Texas Supreme Court reiterated, and applied, the Lehmann

20

principles that it may be necessary for the appellate court to
look in the record of the case to determine whether an order
disposes of all pending claims and parties, id. at 674, and that
"the record illuminates whether an order that all parties appear
to have treated as final may be final despite some vagueness in
the order itself," id. at 674-75 (internal quotation marks,
brackets & ellipsis omitted).  As will be noted below, those
principles bear on an evaluation of the finality and
appealability issue in this case.

C.   **Application of the *Lehmann* Standards to the Issue of
     Finality and Appealability of the Polley III Judgment**

An application of the Lehmann standards to the Polley III
judgment, the district court record of the judgment hearing, the
wording of the judgment, the appellate actions taken by the
Polley III defendants after the judgment was rendered, and the
actions of the Fort Worth Court of Appeals lead inevitably to the
conclusion that the Polley III judgment was final and appealable
as of the date of its rendition, October 15, 2008.

The record is clear that before the judgment was rendered,
Judge Evans considered that An-Mar was out of the case by reason
of the nonsuit Polley announced as to An-Mar at the commencement
of the default judgment hearing, the judge's acceptance of that

21

nonsuit,[7] and the action the judge took on the judgment document itself to reflect that the claims against An-Mar were concluded. The effect of a nonsuit by a party is to render the merits of the case moot as to that party.  See Univ. of Tex. v. Estate of Blackmon, 195 S.W.3d 98, 101 (Tex. 2006).  The nonsuit extinguishes a case or controversy from the moment an oral motion is made in open court.  Id. at 100.  So that there would be no possible uncertainty as to whether all claims were being finally resolved, Judge Evans performed the judicial acts of marking through An-Mar's name in the style of the document he was to sign as a judgment and placing his initials by the mark-out, and then of signing a judgment resolving the claims against the rest of the defendants, which concluded with the finding that "[t]his judgment is final and disposes of all claims and parties, and is appealable."  App. 1 at 75.  Thus, the judgment and the record leading to it, when considered together, establish with unmistakable clarity that the judgment was a final judgment as to all claims and parties.

The Polley III defendants never contended otherwise until they found it to their advantage to do so as an integral part of

_____

[7] The record shows that Judge Evans accepted the nonsuit by saying "An-Mar has been nonsuited."  App. 2 at 44.

their maneuvers to avoid enforcement of the judgment.  When the
Polley III defendants responded on February 12, 2009, to the
February 2, 2009, letter of the Fort Worth Court of Appeals, they
emphasized that An-Mar had been removed from the case before the
Polley III judgment was rendered, saying, "the transcript shows
that [Polley] nonsuited An-Mar Companies, LLC before it [sic]
obtained the Default Judgment against the remaining
[defendants]."  App. 6 at 76.  The concluding remark of the
Polley III defendants in the body of their response was the
unqualified representation to the Fort Worth Court of Appeals
that "[a]s a result of [Polley's] nonsuit of An-Mar Companies,
LLC, [the remaining defendants] understand that the Default
Judgment is a final, appealable judgment."  Id. at 77.  The
response ended with a prayer that the Fort Worth Court of Appeals
"retain this case on its docket and allow [the Polley defendants]
to continue their appeal."  Id.

Obviously, the Polley III defendants were never misled into
thinking that the judgment was not final and appealable as of
October 15, 2008.  Their late filing of their notice of appeal
was not caused by any uncertainty as to whether the judgment was
final and appealable--rather, the late filing was the result of
inadvertence.

Much is made in filings made by the Polley III defendants in the bankruptcy court of the apparent uncertainty expressed on February 2, 2009, by the Fort Worth Court of Appeals over the finality of the Polley III judgment.  There even have been suggestions by the Polley III defendants that the appellate court, in effect, ruled that the judgment was interlocutory at the time of its rendition in October 2008.  The court does not interpret the record as supporting such a contention.  Instead, the facts suggest that the Fort Worth Court of Appeals made a determination that as of October 15, 2008, the Polley III judgment was final and appealable.

The appearance is that the February 2, 2009, letter of the appellate court showed the exercise by the appellate court of the level of caution recommended by the Texas Supreme Court in Lehmann when the Court suggested that if the appellate court is uncertain about the intent of the order appealed from, it can abate the appeal to permit clarification by the trial court.  However, rather than to seek clarification by the trial court, the Fort Worth Court of Appeals sought clarification by the Polley III defendants.  The Polley III defendants gave that clarification by referring in their February 12 response to the trial court record showing that An-Mar had been removed from the

24

case on October 15, 2008. The clarification provided by the
Polley III defendants apparently persuaded the Fort Worth Court
of Appeals that it had jurisdiction. Were that not so, the
appellate court presumably would have dismissed the appeal for
want of jurisdiction as it said it would do by February 12, 2009,
if a response showing grounds for continuing the appeal was not
provided to the court by then. When the Polley III defendants
provided the appellate court with the record of the district
court hearing showing disposition by Judge Evans of the claims of
An-Mar, the appellate court was able, as Lehmann recommended, to
consider that record along with the judgment itself in making a
determination as to whether finality was intended and
accomplished. Not only that, the appellate court could readily
see that no one's right to appeal was being put at risk by a
conclusion that the Polley III judgment was final.

Nor can the June 30, 2009, order of the appellate court
requiring a written order of the state district court nonsuiting
An-Mar in accordance with Polley's oral announcement of nonsuit
on October 15, 2008, be taken as a ruling by the appellate court
that the judgment was not final and appealable as of October 15.
If the appellate court thought that the judgment was not final
and appealable, the action the court presumably would have taken

25

would be to dismiss the appeal.  Rather than to do that, the
appellate court by its June 30, 2009, order was, again,
exercising appropriate caution to the end of seeking to eliminate
future controversy over finality and appealability of the
judgment.

Understandably, after having received on June 12, 2009, the
supplemental response of the Polley III defendants by which they
reversed their position on finality and appealability of the
October 15, 2008, judgment, the Fort Worth Court of Appeals would
have had a concern that the issue had not been put to rest and a
desire to eliminate future controversy on the subject of finality
and appealability.  Interestingly, the order Judge Evans signed
on July 13, 2009, was not a written order nonsuiting An-Mar.
Instead, the order simply stated that on October 15, 2009, "the
Court granted Plaintiff's Non-Suit as to An-Mar Companies, LLC."
App. 2 at 81.  In other words, Judge Evans's order did nothing
more on July 13, 2009, than the record of the October 15, 2008,
hearing showed he did at that hearing.  Nevertheless, that fact
did not dissuade the Fort Worth Court of Appeals from the
conclusion it apparently reached in February 2009 that it had
jurisdiction to proceed with the appeal.

26

While the rule in Texas always has been that the filing, or open-court announcement, by a party of a nonsuit deprives the trial court of jurisdiction to take any action as to a claim asserted against the nonsuited party other than to dismiss it, the rule pre-<u>Lehmann</u> was that the clock for expiration of the trial court's plenary jurisdiction did not start to run as to the claim against a nonsuited party until the signing of an order dismissing the claim against that party.  <u>See In re Bennett</u>, 960 S.W.2d 35, 38 (Tex. 1997).  An argument might reasonably be made that the standards of finality and appealability announced in <u>Lehmann</u> modified the latter rule, at least when the issue is the determination of finality and appealability of a judgment that affects only the rights of litigants who have not been nonsuited. The court is inclined to think that <u>Lehmann</u> overruled the earlier requirement of a signed order of dismissal as to the claim of a nonsuited party to whatever extent that requirement is inconsistent with the <u>Lehmann</u> standards.[8]

---

[8]The court is conscious of the dicta contained in the opinion of the Texas Supreme Court in <u>University of Texas v. Estate of Blackmon</u>, 195 S.W.2d 98, 100 (Tex. 2006), that, while a nonsuit is effective when it is filed, the date on which the trial court signs an order dismissing the suit is the starting point for determining when a trial court's plenary power expires.  The court cannot place significance on that dicta considering that the real issue before the Court for decision was the legal effect of the taking by a party of a nonsuit.  The holding in the case was that "the nonsuit deprived the court of appeals of jurisdiction." <u>Id.</u>

However, even if the written-order requirement persists, it was satisfied as to An-Mar on October 15, 2008, when, after Polley announced on the record she was nonsuiting An-Mar and Judge Evans announced on the record that An-Mar was nonsuited, Judge Evans took the further judicial step of marking through An-Mar's name in the caption of the proposed judgment and placing his initial by the mark-out.  By those judicial acts, Judge Evans noted in writing the dismissal of An-Mar from the suit before he rendered the Polley III judgment.  When those judicial acts are considered together with the record of the hearing, there is certainty that Judge Evans intended his judicial conduct to be a dismissal of Polley's claim against An-Mar in response to her oral nonsuit.  Even if there were some vagueness as to the intent of the judicial acts of Judge Evans, the vagueness would be overcome by the fact that all parties treated the judgment as final and appealable (at least until the Polley III defendants changed their position months later, after hiring new attorneys and becoming involved in bankruptcy proceedings that were calculated to frustrate Polley's attempts to collect the Polley III judgment).

Moreover, the issue is not when the plenary jurisdiction clock started to run as to disposition of Polley's claim against

An-Mar.  Instead, the decisive issue is to when it started to run

as to the disposition of her claims against the remaining

thirteen defendants.  Granted that the An-Mar nonsuit was

interlocutory when it was made, it nevertheless, under well-

established law, finally terminated Polley's claim against An-

Mar.  That final termination was followed by the signing by Judge

Evans of a final judgment as to the claims against the remaining

thirteen defendants.  Thus, the final step to final disposition

of all claims against all defendants was taken in the form of a

written judgment that contained the finding that "[t]his judgment

is final and disposes of all claims and parties, and is

appealable."  App. 1 at 75.  Under those circumstances, there is

no basis for a reasonable argument that the plenary jurisdiction

timetable did not start to run as to all Polley III claims at the

time of the signing of the final judgment on October 15, 2008.

II.

## BANKRUPTCY COURT'S RULINGS THAT ARE
## PERTINENT TO THE RULINGS NOW BEING MADE

The two removals in the Denar and Golden bankruptcy cases of

the state district court Polley III and the appeal to the Fort

Worth Court of Appeals from the Polley III judgment generated an

29

active motion practice.   The motions potentially applicable to the rulings contained herein are the following:

1.   On March 30, 2009, Polley filed in Adversary No. 09-04165-rfn her motion asking the bankruptcy court to remand Polley III to the state district court.

2.   On April 29, 2009, Denar filed in Adversary Nos. 09-04165-rfn and 09-04176-rfn its motion asking the bankruptcy court to make a determination that the Polley III judgment was interlocutory.

3.   In the response Polley filed May 15, 2009, to Denar's April 29, 2009, motion, Polley requested that the bankruptcy court "remand this dispute to the state appellate court for disposition under state law."   Polley's Resp. to Mot. for Determination that Judgment is Interlocutory, No. 09-04165-rfn (Doc. 47) at 10.

4.   On May 19, 2009, Metro A, Sun, POP, Golden, Firebrand, Corral, Kansas, Sunny, TAG, Indie, and Perales joined in the April 29, 2009, motion of Denar in Adversary Nos. 09-04165-rfn and 09-04176-rfn seeking a determination that the Polley III judgment was interlocutory.

5.   On July 17, 2009, Denar filed in Adversary No. 09-04165-rfn its motion to set aside Denar's default in Polley

30

III and the Polley III judgment and for new trial in Polley III.

6. On July 30, 2009, the debtors in the Golden bankruptcy cases filed in Adversary No. 09-04253-rfn their motion to set aside their defaults in Polley III and the Polley III judgment and for new trial in Polley III.

7. On July 30, 2009, the nondebtor Polley III defendants filed in Adversary No. 09-04253-rfn their joinder in the July 30, 2009, motion of the debtors in the Golden bankruptcy cases.

8. On August 12, 2009, Polley filed in the Golden bankruptcy cases her motion to modify the automatic stays in the Golden bankruptcy cases as they affected the state district court Polley III and the appeal to the Fort Worth Court of Appeals of the Polley III judgment.

9. On August 12, 2009, Polley filed in Adversary No. 09-04253-rfn a motion seeking a severance of the claims and issues against the non-bankruptcy defendants and a remand against the non-bankrupt defendants of Polley III to the state court for disposition under state law.

10. In October 2009, Polley filed her motions in the bankruptcy court and this court for leave to file

interlocutory appeals.  The motions filed in this court were docketed as Case Nos. 4:09-CV-616-A, 4:09-CV-641-A, and 4:09-CV-642-A, and were consolidated to be carried under Case No. 4:09-CV-616-A.  The requests to pursue interlocutory appeals were directed to the orders adverse to Polley that Judge Nelms had issued in the Denar and Golden bankruptcy cases pertaining to Polley III and the appeal from the Polley III judgment.  Basically, Polley sought leave to appeal from each of the orders rendered by Judge Nelms in response to the motions listed and described above. As noted earlier, <u>supra</u> at 5, the court is treating the motions for leave as motions for reconsideration of the rulings of Judge Nelms as to which leave to appeal was sought.

11.  On October 29, 2009, Denar and the debtors in the Golden bankruptcy cases filed in Adversary Nos. 09-04165-rfn and 09-04253-rfn a motion to consolidate those adversary proceedings and compelling repleading in the removed Polley III.

Judge Nelms made the following rulings directly or indirectly in response to the motions mentioned above:

1.  In a proceeding conducted by Judge Nelms on May 26, 2009, primarily for the purpose of announcing rulings, Judge Nelms ordered the lifting of the automatic stay applicable to Polley's claims against all Polley III defendants other than Denar, saying:

> [T]o the extent that any stay at all applies to Polley's claims against the non-debtor defendants, that stay is lifted for cause.  The stay is not lifted with respect to Polley's claims against the Debtor in this adversary proceeding.

App. 1 at 277.

2.  On May 28, 2009, Judge Nelms granted in part Polley's March 30, 2009, motion to remand Polley III by issuing an order in Adversary No. 09-04165-rfn remanding Polley III to the state district court as to all Polley III defendants other than Denar.

3.  By another order issued in Adversary No. 09-04165-rfn on May 28, 2009, Judge Nelms granted in part Denar's April 29, 2009, motion asking for a determination that the Polley III judgment was interlocutory by ruling that the judgment was interlocutory only as to Denar.  The order said that it did not apply to any other Polley III defendant.

4. On June 4, 2009, Judge Nelms issued an order in Adversary No. 09-04176-rfn, apparently in response to the request Polley made in the document she filed May 15, 2009, that the bankruptcy court "remand this dispute to the state appellate court for disposition under state law," _supra_ at 29, ¶ 3, remanding to the Fort Worth Court of Appeals as to all Polley III defendants other than Denar the appeal from the Polley III judgment and ordering with respect to Denar the dismissal of the removed appeal without prejudice to refiling.

5. On September 4, 2009, Judge Nelms issued an order in Adversary No. 09-04165-rfn ruling that Denar's default in failing to timely file an answer in Polley III was set aside and that Denar was granted a new trial in Polley III, thus seemingly granting the relief Denar sought by the motion it filed July 17, 2009, in that adversary proceeding (though Judge Nelms's order did not set aside the Polley III judgment itself as to Denar).

6. On October 2, 2009, when announcing rulings on pending motions, Judge Nelms made a ruling in the Golden bankruptcy cases on Polley's motion for relief from stay by announcing on the record that "[a]s to Polley's Motion to

Lift the Automatic Stay, to the extent that any stay as to
*Polley Three* is now in effect, that stay is lifted." App. 1
at 462.

7.  On October 8, 2009, Judge Nelms issued an order in
Adversary No. 09-04253-rfn denying the severance and remand
relief sought by Polley in the motion she filed in that
proceeding on August 12, 2009.

8.  Also on October 8, 2009, Judge Nelms issued an
order in Adversary No. 09-04253-rfn granting the July 30,
2009, motions that Judge Nelms took to be motions of all
Polley III defendants (both debtor defendants and nondebtor
defendants) to set aside their defaults in failing to timely
answer in Polley III and to set aside the Polley III
judgment and grant a new trial by ordering that each
defendant's default in failing to timely file an answer in
Polley III was set aside, that the October 15, 2008,
judgment was set aside with respect to each defendant, and
that each defendant was granted a new trial.

9.  On December 8, 2009, Judge Nelms issued an order in
Adversary No. 09-04253-rfn (in the Golden bankruptcy cases)
and Adversary No. 09-04165-rfn (in the Denar bankruptcy
case) granting the relief sought by Denar and the debtors in

the Golden bankruptcy cases in their October 29, 2009,

motion (seeking consolidation and a repleading) by ordering

that Adversary Nos. 09-04165-rfn and 09-04253-rfn were

consolidated, to bear from the point forward Adversary No.

09-04253-rfn, styled "Jessica Polley v. Golden Restaurants,

Inc., et al.," and by ordering that Polley file an amended

complaint in the consolidated adversary by December 18,

2009, in which she would replead her petition against all

Polley III defendants.

                                III.

                    **THE RULINGS NOW BEING MADE**

While not agreeing with Polley that the Polley III judgment

was not interlocutory, both counsel for the Polley III debtor-

defendants and Judge Nelms seem to have agreed with Polley that

if the judgment was not interlocutory when it was signed on

October 15, 2008, the bankruptcy court would not have had

jurisdiction to make the rulings that adversely affected the

judgment.

In a telephone conference/hearing conducted January 8, 2010,

counsel for the Polley III debtor-defendants expressed agreement

that Judge Nelms "would not have had the power to set aside a

default judgment in the procedural manner in which he did so" if

                                 36

the Polley III judgment was not interlocutory; and, counsel added
his view that the threshold issue "is whether that judgment was
final or interlocutory, and [he] would believe . . . that the
rest will follow from that decision." App. 8 at 616.[9]   Judge
Nelms seemed to express agreement when he said on the record on
October 2, 2009, while announcing certain of his rulings, that:

> This case did introduce a new argument by Polley,
> that being that this Court does not have jurisdiction
> to set aside Judge Evans's order because . . . that
> order had been appealed to the Fort Worth Court of
> Appeals, and as such, I only had the same power that
> Judge Evans himself had, which according to Polley was
> no authority at all to reverse or set aside the default
> judgment.   Polley contends that . . . the plenary power
> over Judge Evans's order had vested in the Fort Worth
> Court of Appeals, and as such, notwithstanding the
> removal of the case from Judge Evans's court, there was
> nothing for this Court to decide.   This is an important
> issue, and notwithstanding any complaint by the Debtors
> as to the timing of that issue, it is an issue that the
> court must address.   Ultimately, this issue circles
> back to one of the first issues addressed by this Court
> in *Denar*, and that is whether Judge Evans's order
> granting the default judgment was final or
> interlocutory.

App. 1 at 449-50.

Thus, for Judge Nelms to rule as he did, he had to find a
way to avoid the jurisdictional bar created by pendency of a

---

[9]The "App. 8 at ___" reference is to a four-volume appendix filed March 19, 2010, in Case No.
4:09-CV-616-A (as consolidated) titled "Ms. Polley's Supplemental Response to Debtor-Appellees'
Memorandum Regarding Plenary Jurisdiction to Set Aside Default Judgment, Appendix."

Polley III appeal at the time of its removals to the bankruptcy
court. He found that way by adopting the position the debtor-
defendants had taken in their motions and their responses to
Polley's motions that the Polley III judgment did not become
final and appealable until Judge Evans signed on July 13, 2009,
the order stating that on October 15, 2008, he granted Polley's
nonsuit as to An-Mar. Judge Nelms explained on the record at the
October 2, 2009, proceeding that:

> I am convinced that Judge Evans's order did not become
> final until July the 13th, 2009, the day he signed the
> order nonsuiting An-Mar.
>
> That action reset the timetable for, among other
> things, filing a motion for new trial, and such motions
> were timely filed by the Defendants in this Court on
> July the 30th, 2009. Because of this, the Court does
> exercise jurisdiction over this case, and so, to the
> extent that Polley asked the Court to remand or abstain
> from hearing this adversary proceeding because it lacks
> jurisdiction, the Court denies that request.

Id. at 452-53.

Having agreed with Polley that the Polley III judgment was
final and appealable on October 15, 2008, thus causing the
bankruptcy court not to have jurisdiction to make rulings during
and after May 2009 that adversely affected the judgment, the
court has concluded that the following rulings of the bankruptcy
court should be set aside and vacated: (1) the ruling in the May

38

28, 2009, order in Adversary No. 09-04165-rfn declining to remand Polley III as to Denar; (2) the ruling in the other May 28, 2009, order in Adversary No. 09-04165-rfn that as to Denar the Polley III judgment was interlocutory; (3) the rulings in the June 4, 2009, order in Adversary No. 09-04176-rfn that the Polley III appeal was not remanded as to Denar and that the appeal as to Denar was dismissed; (4) the rulings in the September 4, 2009, order in Adversary No. 09-04165-rfn that Denar's default in failing to file a timely answer in Polley III was set aside and that Denar was granted a new trial in Polley III; (5) the rulings in the October 8, 2009, order in Adversary No. 09-04253-rfn that the default of each Polley III defendant in failing to timely file an answer in Polley III was set aside, that the Polley III judgment was set aside as to each Polley III defendant, and that each Polley III defendant was granted a new trial; (6) the ruling in the other October 8, 2009, order in Adversary No. 09-04253-rfn denying Polley's motion to remand Polley III; and (7) the rulings in the December 8, 2009, order in Adversary No. 09-04253-rfn requiring Polley to replead in the removed Polley III and defining other procedural steps to be taken in Polley III. Correspondingly, the court has concluded that all pleadings filed pursuant to such December 8, 2009, order should be stricken.

The same reasons the bankruptcy had for remanding Polley III (except as to Denar), on May 28, 2009, and remanding the Polley III appeal (except as to Denar) on June 4, 2009, provide ample justifications for the remands that are now being ordered by this court. See id. at 272-77. The court concludes that there was never a good reason for Polley III or the appeal from the Polley III judgment to be pending in the bankruptcy court.

The Fort Worth Court of Appeals should be permitted to conclude the Polley III appeal, considering the resources it already has devoted to the appellate process and its familiarity with Texas legal principles. If the Polley III judgment is affirmed on appeal, the rights and obligations of Polley and the nondebtor defendants in relation to the Polley III judgment will be fixed, subject only to further appeal, and the amount of the indebtednesses owed to Polley by the debtor Polley III defendants will have become liquidated in an orderly fashion without further exhaustion of resources of this court or the bankruptcy court. Thus, the court concludes that, for cause, the automatic stays as to the appeal should be lifted.

None of the findings, conclusions, or rulings the court is making in this memorandum opinion and order are intended to suggest what the outcome should or would have been if Polley III

40

had been decided by a judgment rendered after a trial rather than by a default judgment. However, the court considers important that the information available to the court shows that: Polley's conduct in obtaining a default judgment was perfectly legitimate once the defendants failed to timely answer; the defendants had a full and fair opportunity to seek relief from the judgment through their state court motion for new trial and the hearing on the motion; and, the defendants still have a full and fair opportunity to seek relief from the judgment through their appeal to the Fort Worth Court of Appeals. If the appellate court concludes that the state district court committed an error in rendering the judgment or in declining to set it aside in response to the motion for new trial, presumably the appellate court will give the Polley III defendants whatever relief they should have under Texas law. The court is of the view that the state courts, not the federal courts, should resolve those issues, all of which are governed by the procedural and substantive laws of the State of Texas.

The remand this court is ordering of Polley III to the state district court is, for the time being, for the limited purposes of permitting Polley to conduct post-judgment discovery in Polley III and to engage in collection activities against the nondebtor

Polley III defendants.   There is no reason why Polley should be denied those rights by the pendency of the bankruptcy cases filed by certain of the Perales-related companies.   The record makes apparent that the filings of the bankruptcy cases were inspired by a desire to prevent Polley from being able to pursue her post-judgment rights arising from the existence of the Polley III judgment.   That should not be permitted as to the nondebtor defendants.

Judge Nelms already has lifted the automatic stays as to Polley III.   See id. at 462; see also id. at 277.   The stay ruling of this court as to Polley III does not expand Judge Nelms's ruling.   Instead, it narrows it by limiting permitted Polley III state district court activities to collection activities against the nondebtor defendants and post-judgment discovery activities.

IV.

**THE SIGNIFICANCE GIVEN BY JUDGE NELMS
TO THE AUTOMATIC STAY EXISTING BY REASON OF AN
EARLIER-FILED BANKRUPTCY CASE IN THE DALLAS DIVISION**

The subject of discussion under this heading is of a matter that does not appear directly to bear on the rulings the court is making in this memorandum opinion and order.   However, Judge Nelms placed such significance on an automatic stay existing by

42

reason of a bankruptcy case a Perales-owned company filed in the

Dallas Division of this court before the filing of Polley III

that the court thinks appropriate to express its views on that

subject.  First, the court must provide additional background

information.

The six-year litigation saga between Polley and Perales and

his companies[10] commenced with the filing by Polley in the year

2004 of a damage suit against, among others, Metro Restaurants

("Metro"), a Perales-owned company, complaining of sexual

assaults committed on Polley by a supervisory employee at a

restaurant operated by Metro in Euless, Texas ("Polley I").

Following a jury trial, Judge Evans rendered a judgment on July

25, 2007, in Polly I awarding Polley recovery from Metro of

$869,172.95 based on the jury's verdict.

On July 2, 2008, Polley filed a suit in the district court

of Tarrant County, Texas, 153rd Judicial District, against Metro

and the fourteen companies that before October 15, 2008, were

named as the defendants in Polley III, alleging that all the

defendants were related entities and that Metro had transferred

assets to the other defendants with the intent to delay, hinder,

---

[10]The record discloses that Perales owns all thirteen of the Polley III defendants.

and defraud Polley in her attempts to make collection of the July 25, 2007, judgment in Polley I ("Polley II").  Eight days after Polley II was filed, Metro filed a Chapter 7 bankruptcy case in the United States District Court for the Northern District of Texas, Dallas Division, which was assigned to United States Bankruptcy Judge Harlin DeWayne Hale and was docketed as Case No. 08-33377-HDH-7 (the "Metro bankruptcy case").  On August 5, 2008, the attorney who had represented Metro in Polley I filed with the state district court in Polley II a notice of the Metro bankruptcy case.  Apparently no further action has been taken in Polley II.

Polley III was filed on September 10, 2008.  Polley alleged in an abbreviated form essentially the same liability facts against the Polley III defendants she had alleged against Metro in Polley I.  She asserted that the defendants named in Polley III were jointly and severally liable for the negligence of Metro; and, she sought recovery of damages against the Polley III defendants based on that alleged joint and several liability.  On October 10, 2008, the attorney who had represented Metro in Polley I filed in Polley III a notice of the Metro bankruptcy case that was identical to the one he had filed in Polley II.

On October 15, 2008, the Polley III judgment was rendered. On November 13, 2008, the Polley III defendants filed their motion for new trial, which was heard by Judge Evans on December 3, 2008.  On December 3, 2008, the Polley III defendants filed their answer in Polley III.  The motion for new trial was overruled by operation of law on December 29, 2008.  On January 29, 2009, the Polley III defendants filed their notice of appeal to the Fort Worth Court of Appeals.  On February 2, 2009, the Fort Worth Court of Appeals sent to the attorney for the Polley III defendants the letter raising the interlocutory issue.  In late January 2009 and on February 3, 2009, Polley engaged in attempts to obtain post-judgment discovery in Polley III.  On February 3, 2009, the Polley III defendants filed a motion in Polley III asking Judge Evans to quash Polley's discovery attempts.

On the date when the motion to quash was filed, the Polley III defendants initiated Adversary Proceeding No. 09-03036-hdh against Polley and her state court attorney in the Metro bankruptcy case by a motion seeking an emergency temporary restraining order and preliminary injunctive relief to prevent Polley or her attorney from doing anything to prosecute, advance,

bring to trial, enforce, abstract, levy, execute, or collect in connection with Polley II or Polley III.

On February 5, 2009, Judge Hale signed a temporary restraining order granting temporarily the relief sought by the February 3 filing. Among the findings made by Judge Hale were that "[b]ased upon the limited evidence before the Court, there is a substantial likelihood that the [the Polley III defendants] will prevail on their claims against [Polley and her attorney] after trial on the merits, as to [the Polley III defendants'] claims that the causes of action asserted in [Polley II and III] are property of the Estate and that [Polley and her attorney] have been, and will continue to, violate the automatic stay absent injunctive relief." App. 1 at 79.

After a formal hearing conducted by Judge Hale on March 5, 2009, Judge Hale rendered an order on March 9, 2009, denying the injunctive relief requested by the February 3 motion, this time expressing the conclusion that "the state court lawsuit, also called 'Polley III' by the parties, does not violate the stay" and that "[the Polley III defendants] have not met their burden

of showing a likelihood of prevailing on the merits." <u>Id.</u> at 3.
Judge Hale went on to find that:

> The state court petition in Polly [sic] III seeks
> joint and several liability against nondebtor entities
> for negligence claims which Ms. Polley allegedly holds
> against them.  These negligence claims could not have
> been raised by the Debtor or Trustee in this case.  She
> did not sue these parties for claims, such as
> fraudulent transfer or alter ego, which would belong to
> the estate.  Rather, she has asserted independent
> claims. . . .  At the preliminary injunction hearing,
> Polley's counsel explained their theories upon which
> the claims rest.  Those theories are not estate
> claims. . . .
>
> [The Polley III defendants] raise good points as
> to whether some of them can be liable to [Polley] in
> the state court judgment, as some of [the Polley III
> defendants] were not even in existence at the time
> Polley's claims arose. They also spent a lot of time
> during the preliminary injunction hearing trying to
> poke holes in [Polley's] pleadings and procedure before
> the state court. These issues, along with actual merits
> of the claims are more properly matters to be resolved
> by the state courts.

<u>Id.</u> at 4 (citation omitted).

This leads to a discussion of the consideration given by
Judge Nelms to the Metro bankruptcy case in certain of his
rulings that are mentioned in section II of this memorandum
opinion and order.

When Judge Nelms announced on August 27, 2009, the rulings
he made in the order he issued September 4, 2009, that Denar's
default in failing to timely file an answer in Polley III was set

aside and granting Denar a new trial, Judge Nelms placed significant reliance on the Metro bankruptcy case. See id. at 119-24. Apparently Judge Nelms was influenced to grant Denar relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure from the Polley III judgment by his assumption that a factor that entered into the failure of the Polley III defendants to timely file an answer was a belief on the part of the attorney for the Polley III defendants that the automatic stay created by the Metro bankruptcy case applied to Polley III. Id. at 121-22, 124-25, 127.

By the time Judge Nelms announced on October 2, 2009, the rulings that led to his October 8, 2009, orders setting aside the defaults of the Polley III defendants and the Polley III judgment and granting a new trial as to each of the Polley III defendants, Judge Nelms seemed to have become firmly convinced that the automatic stay created by the Metro bankruptcy case had the effect of staying Polley III when the default judgment was entered and that the reason why the Polley III defendants did not timely file an answer in Polley III was reliance by an attorney for the Polley defendants on the Metro bankruptcy case automatic stay.

As to the latter point, Judge Nelms explained:

> When the Court set aside the same judgment as to
> Denar, it noted the fact that Mr. Dobbins credibly and
> reasonably relied upon the application of the stay by
> not filing an answer on behalf of the Perales-related
> entities.  I find the same is true as to all
> defendants, inasmuch as Mr. Dobbins made the same
> decision on behalf of all defendants, and all
> defendants were represented by the same counsel.

Id. at 456.

As to the conclusion that the automatic stay applied to

Polley III, Judge Nelms explained:

> *Polley Three* was on the date of the default judgment
> arguable property of the Metro Estate.  This is true,
> even though Judge Hale later determined that it was not
> property of the estate.  Thus, *Polley Three* was stayed
> when the default judgment was entered, and it remained
> stayed until Judge Hale ruled otherwise.

Id. at 455.  Judge Nelms's reasoning was that, even though the

Polley III petition alleged joint and several liability on the

Polley III defendants for the actions of Polley's rapist, "[i]t

is logical . . . to view the petition as a claim based on alter-

ego, single-business enterprise, or the like," with the

consequence that "Polley III was on the date of the default

judgment arguable property of Metro estate."  Id. at 9.  In other

words, Judge Nelms disagreed with the March 9, 2009,

determination of Judge Hale that Polley III did not violate the

automatic stay in the Metro bankruptcy case over which Judge Hale
was presiding.

Based on his October 2, 2009, findings and conclusions,
Judge Nelms decided to grant relief from the Polley III judgment
under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  Id.
at 11.

Commenting first on the finding of Judge Nelms that credible
and reasonable reliance by the representative of the Polley III
defendants on the stay created by the Metro bankruptcy case is
the reason why the Polley III defendants failed to timely file an
answer in Polley III, the court makes the observation that if
Judge Nelms had evidence available to him that supported that
finding, the evidence provided false support because the only
reliable evidence on that subject proves that the automatic stay
in the Metro bankruptcy case was not the reason why the Polley
III defendants failed to timely answer.  The best evidence on
that subject are the allegations in the motion for new trial
filed by the Polley III defendants in state court on November 13,
2008, and the position taken by the Polley III defendants at the
December 3, 2008, hearing on that motion.

The motion for new trial alleged, without qualification,
that the failure to timely file an answer was caused by a

50

clerical error resulting from a miscalculation of the answer
date.  App. 6 at 114, ¶ 4.  The only mention in the motion of the
Metro bankruptcy case stay was in the part of the motion
describing what the Polley III defendants considered to be their
meritorious defenses to the claims asserted against them in
Polley III.  Id. at 114-15, ¶¶ 5 & 6.  Similarly, at the hearing
on the motion for new trial, the only facts urged by the Polley
III defendants as excusing their failure to timely file an answer
were that the person responsible for calculating the answer date
miscalculated it and conveyed the incorrect answer date to the
attorney responsible for causing an answer to be filed.  App. 7
at 171-73, 181.[11]  In his concluding remarks, the lawyer for the
Polley III defendants confirmed their position that the failure
of the answer to be timely filed was the consequence of the
miscalculation of the answer date, saying:

> It's our position that she sent over the petition
> to Mr. Jones, advised him of her calculation of the
> answer date, and, consequently, an answer was not
> timely filed on October 13, 2008.

Id. at 181.  As was true with the allegations in the motion for
new trial, the only mention made of the Metro bankruptcy case

---

[11]The "App. 7 at ____" reference is to a two-volume appendix filed January 22, 2010, in Case No. 4:09-CV-616-A (as consolidated) titled "Complete Record of First Removed Appeal (Adversary No. 09-04176-RFN)."

stay at the hearing on the motion was to provide Judge Evans
basis for a conclusion that there was a meritorious defense to
Polley's claim in Polley III, not as an excuse for failure to
timely file an answer.

The court turns now to Judge Nelms's finding that Polley III
violated the Metro bankruptcy case stay.  After having considered
the rulings and analysis made by Judge Hale in his March 9, 2009,
order and the explanations given by Judge Nelms on August 27 and
October 2, 2009, and after having thoroughly studied the record,
the court agrees with Judge Hale that Polley III did not violate
the Metro bankruptcy case automatic stay.  For the conclusion to
be reached that Polley III violated the stay, the court would be
required to reword the allegations of Polley's Polley III
pleading to make them allege causes of action that Polley chose
not to plead.  The fact that a court might suspect that Polley
would not be able to prove the theory of recovery she pleaded in
Polley III does not provide justification for pretending that she
pleaded other causes of action, such as fraudulent transfer or
alter ego.  If Polley had gone to trial in state court on her
Polley III pleading, she would not have been permitted to prove
fraudulent transfer or alter-ego theories of recovery.  Rather,
she would have been held to her pleading, which would have

required her to prove that the Polley III defendants were jointly
and severally liable with Metro for the assaults committed on
Polley.  The suspicion that she might not be able to make that
proof does not permit an inference that she really was pleading
unstated causes of action.

If the Polley III defendants had timely answered in Polley
III, Polley would have been put to the test of making proof of
her pleaded theory of recovery, just as would have been required
of any other plaintiff whose allegations have been joined by a
timely filed answer.  The fact that defendants forfeited the
right to put Polley to that test by failing to timely answer is
no reason to pretend that Polley really did not intend to assert
against them the theory of recovery she alleged.

V.

**ORDER**

For the reasons given above,

1.  The court ORDERS that the following-listed rulings of
the bankruptcy court be, and are hereby, set aside and vacated
effective before the remand to the state courts of Polley III and
the appeal from the Polley III judgment:

a. the ruling in an order issued May 28, 2009, by Judge Nelms in Adversary No. 09-04165-rfn declining to remand Polley III as to Denar;

b. the ruling in the other order issued May 28, 2009, by Judge Nelms in Adversary No. 09-04165-rfn that as to Denar the Polley III judgment was interlocutory;

c. the rulings in the order issued June 4, 2009, by Judge Nelms in Adversary No. 09-04176-rfn declining to remand to the Fort Worth Court of Appeals as to Denar the appeal from the Polley III judgment and ordering with respect to Denar the dismissal of the removed appeal;

d. the ruling in the order issued September 4, 2009, by Judge Nelms in Adversary No. 09-04165-rfn that Denar's default in failing to timely file an answer in Polley III was set aside and that Denar was granted a new trial in Polley III;

e. the ruling in an order issued October 8, 2009, by Judge Nelms in Adversary No. 09-04253-rfn denying remand relief sought by Polley;

f. the rulings in the other order issued October 8, 2009, by Judge Nelms in Adversary No. 09-04253-rfn setting aside the defaults of the Polley III defendants in failing

to timely answer in Polley III, setting aside the Polley III judgment with respect to each Polley III defendant, and granting each Polley III defendant a new trial in Polley III; and

    g.  the rulings in the order issued December 8, 2009, by Judge Nelms in Adversary No. 09-04253-rfn and Adversary No. 09-04165-rfn concerning procedural matters related to the removed Polley III, including the requirement that there by a repleading by the parties.

    2.  The court further ORDERS that all repleadings made by the parties pursuant to the directives of the December 8, 2009, order mentioned in subparagraph g. above, including the amended pleading Polley filed in Adversary No. 09-04253-rfn on December 18, 2009, the answer thereto and counterclaims of the debtor-Polley III defendants filed in that proceeding on January 5, 2010, and the answer thereto and counterclaims of the nondebtor-Polley III defendants filed in that proceeding on January 6, 2010, be, and are hereby, stricken from the record of the adversary proceedings effective before the remand of Polley III to the state district court.

    3.  The court further ORDERS that the state court appeal from the Polley III judgment that was twice removed to the

bankruptcy court, first as Adversary Proceeding No. 09-04176-rfn
and then as Adversary Proceeding No. 09-04320-rfn, be, and is
hereby, remanded to the Fort Worth Court of Appeals from which it
was removed and where it was docketed as Case No. 02-09-00025-CV,
styled, "Metro A, LLC, Denar Restaurants, LLC, Sun Holdings, LLC,
POP Restaurants, LLC, Golden Restaurants, Inc., Firebrand
Properties, LP, Corral Group, LP, Kansas Corral, LLC, Sunny
Corral Management, LLC, Guillermo Perales, Frys [sic] Management,
LLC, TAG Corral, LLC and Indie Corral, LLC, Appellants, v.
Jessica Polley, Appellee"; and, the clerk of this court is
DIRECTED to provide to the Clerk of the Fort Worth Court of
Appeals a certified copy of this memorandum opinion and order
together with a cover sheet showing that it pertains to Case No.
02-09-00025-CV on the docket of the Fort Worth Court of Appeals.

4.   The court further ORDERS that the stays created by
11 U.S.C. § 362 existing by reason of the bankruptcy cases
mentioned in the caption of this memorandum opinion and order be,
and are hereby, lifted as to the appeal mentioned in paragraph 3
above, so that the parties to such appeal will be at liberty to
take whatever action is appropriate in pursuit or resistence of
the appeal, and the Fort Worth Court of Appeals will be at

56

liberty to take such actions in reference to the appeal as it deems appropriate.

5. The court further ORDERS that Polley III, which was twice removed to the bankruptcy court, first as Adversary Proceeding No. 09-04165-rfn and then as Adversary Proceeding No. 09-04253-rfn, be, and is hereby, remanded to the state district court from which it was removed and where it was docketed as Case No. 48-232713-08 and styled, "Jessica Polley, Plaintiff, v. Metro A, LLC; Denar Restaurants, LLC; Sun Holdings, LLC; POP Restaurants, LLC; Golden Restaurants, Inc.; Firebrand Properties, LP; Corral Group, LP; Kansas Corral, LLC; Sunny Corral Management, LLC; Frys [sic] Management, LLC; TAG Corral, LLC; Indie Corral, LLC; and Guillermo Perales, Defendants"; and the clerk of this court is DIRECTED to provide to the Clerk of the District Court of Tarrant County, Texas, 48th Judicial District, a certified copy of this memorandum opinion and order together with a cover sheet showing that it pertains to Case No. 48-232713-08 on the docket of the District Court of Tarrant County, Texas, 48th Judicial District.

6. The court further ORDERS that the stays created by 11 U.S.C. § 362 existing by reason of the bankruptcy cases mentioned in the caption of this memorandum opinion and order be,

57

and are hereby, modified and lifted as to the state court suit
mentioned in paragraph 5 above to the extent that Polley will be
permitted to conduct post-discovery activity in such suit and to
engage in judgment-collection activities against Metro A, LLC,
Sun Holdings, LLC, POP Restaurants, LLC, Firebrand Properties,
LP, Corral Group, LP, Guillermo Perales, and Fries Management,
LLC, and the state court will be at liberty to take such actions
in reference to such post-judgment discovery activity and such
judgment-collection activities as the state court deems
appropriate.

SIGNED June _11_, 2010.

_____
JOHN McBRYDE
United States District Court